## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

**EMPLOYMENT DISCRIMINATION COMPLAINT FOR**
**PRO SE LITIGANTS IN ACTIONS FILED UNDER**
**42 U.S.C. § 2000e, *et seq.*, (Title VII of the Civil Rights Act)**
**29 U.S.C. § 621, *et seq.*, (Age Discrimination in Employment Act); or**
**42 U.S.C. § 12112, *et seq.*, (Americans with Disabilities Act)**

DAVID Y. MILLER ,

*(Write the full Name of each Plaintiff*
*who is filing this complaint. If the*
*names of all the Plaintiffs cannot fit*
*in the space above, please write*
*"see attached" in the space and*
*attach an additional page with the*
*full list of names.)*

v.

RUBY TUESDAY.

Case No.: 1-20-cv-226-
*(To be filled in by the Clerk's Office)* MW
GRJ

_____,

*(Write the fill name of each Defendant*
*who is being sued. If the names of all*
*the Defendants cannot fit in the space*
*above, please write "see attached" in*
*the space and attach an additional page*
*with the full list of names.)*

**Jury Trial Requested?**
□ **YES**   □ **NO**

FILED USDC FLND GV
SEP 9 '20 PM1:49

## I. PARTIES TO THIS COMPLAINT

A. Plaintiff

1. Plaintiff's Name: _DAVID T. MILLER_

   Address: _308 SE HAPPY VALLEY GLEN_

   City, State, and Zip Code: _HIGH SPRINGS FL. 32643._

   Telephone: _352-281-2938_ (Home) _Same_ (Cell)

2. Plaintiff's Name: _N/A_

   Address: _____

   City, State, and Zip Code: _____

   Telephone: _____ (Home) _____ (Cell)

   *(Provide this information for any additional Plaintiffs in this case by attaching an additional page, as needed.)*

B. Defendant(s)

1. Defendant's Name: _RUBY TUESDAY_

   Name of Employer *(if relevant):* _____

   Address: _333 E BROADWAY AVE_

   City, State, and Zip Code: _MARYVILLE TN 37804_

2. Defendant's Name: _____

Name of Employer *(if relevant)*: _____

Address: _____

_____

City, State, and Zip Code: _____

*(Attach a page to provide this information for any additional*

*Defendants.)*

## II. BASIS FOR JURSIDICTION

This case is brought for discrimination in employment pursuant to:

*(Check all that apply)*

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e -

§ 2000e-17 *(race, color, gender, religion, national origin)* *(Note: To bring*

*a federal lawsuit under Title VII, you must first obtain a Notice of Right*

*to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §

621 to § 634. *(Note: To bring a federal lawsuit under the Age*

*Discrimination in Employment Act, you must first file a charge with the*

*Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990 [A.D.A.], as codified, 42 U.S.C.

§ 12112 to § 12117. *(Note: To bring a federal lawsuit under the A.D.A.,*

*you must first obtain a Notice of Right to Sue letter from the Equal*

*Employment Opportunity Commission.)*

☐ Other Federal Law (*be specific):* _____

_____

☐ Relevant State Law (*specify, if known):* _____

_____

☐ Relevant City or County Law (*specify, if known):* _____

_____

## III. STATEMENT OF CLAIM

Write a short and plain statement of your claim. Do not make legal arguments
or quote from cases. State the facts which show what happened, as well as
where and when it happened. State how each Defendant was involved and
explain what a Defendant did or did not do. Identify how each named
Defendant caused you harm or violated federal law. Write each statement in
numbered paragraphs, limited as far as practicable to a single event or incident.
If more than one claim is asserted, number each claim, and ensure that a short
and plain statement of facts supporting each claim is included in the facts
alleged. Attach no more than two (2) additional pages to state your claim.

ON JANUARY 24ᵗᴴ 2020 @ 2pm. I WAS
TERMINATED BY ROD MASON, DOING BUSINESS

**Statement of Claim, Continued** *(Page ___ of ___)*

For Ruby Tuesday Restaurants. - After 17½ years of faithfull service. I was fired without notice or opportunity. I have no prior warnings that this action was going to take place.

I am attatching a sequence of events that may be duplicated. -

I felt I was discriminated against by Ben Renball. - Area Supervisor from the time he assumed duties as my Director Supervisor, until termination in January of 2020.

① Summer of 0018 - Requested increases for my team - Hourly employees - Several requests were made - I found out Thomasville GA, same director - had recieved 7 increases for team where I had received none. - After notifying His Supervisor - Rod Mason - Action started to place.

② Retaliation - Ben would push back my managual schedule - Prior to Approval - until I wrote

CONT' D

② - IT TO HIS LIKING. DISRUPTING ANY CONSISTANT or QUALITY or LIKE ISSUES MY MANAGEMENT TEAM MAY HAVE.

③ BEN REUBIN - ISSUED PAY INCREASE TO TEAM MEMBERS WITHOUT MY KNOWLEGE OR INPUT ON AT LEAST 2 OCCASIONS. 2/19 and 1/20.

④ I SPOKE WITH MICHAEL CLAIRE, HR, ON SEVERAL OCCASIONS CONSTRAINING MY ISSUES WITH BEN REUBIN, INCLUDING 1 WEEK PRIOR TO MY TERMINATION - HIS RESPONSE TO ME THAT DAY WAS, MAINTAIN MY PROFESSIONALISM — WHICH I DID —

5 p.

A. The discriminatory conduct at issue includes (*check all that apply*):

   ☐ Failure to hire

   ☑ Termination of employment

   ☐ Failure to promote

   ☐ Failure to accommodate disability

   ☐ Unequal terms and conditions of employment

   ☐ Retaliation

   ☐ Other acts *(specify):* _____

*(ATTENTION: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission may be considered by the federal district court under the federal employment discrimination statutes.)*

B. The alleged discriminatory acts occurred on: _____

   ☐ Plaintiff sought employment with Defendant on _____ or

   ☑ Was employed by Defendant from *6/17/2002* until *1/24/2020*

C. The location where Plaintiff was employed or sought employment was:

   Address: *245 Commerce Blvd*

   _____

   City, State, and Zip Code: *Lake City FL 30325*

## IV. EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

A. Plaintiff filed charges against Defendant with the Equal Employment

   Opportunity Commission or the Florida Commission on Human Rights

   on: _June 26, 2020_

B. Respondent(s) named on the charging document were: _Ruby Tuesday._

   _____

   *(If possible, attach a copy of the charges filed.)*

C. The Equal Employment Opportunity Commission: *(check one)*

   ☐ Has not issued a Notice of Right to Sue letter.

   ☑ Issued a Notice of Right to Sue letter which I received on _June 26, 2020_

   *(Note: You must attach a copy of the Notice of Right to Sue letter*

   *received from the Equal Employment Opportunity Commission to this*

   *complaint.)*

D. As claimed in the Equal Employment Opportunity Commission charging

   document, Defendant discriminated against Plaintiff because of Plaintiff's:

   ☐ Gender/Sex *(please identify)* _____

   ☐ Race *(please identify)* _____

   ☐ Color *(please identify)* _____

   ☐ Religion *(please identify)* _____

   ☐ National origin *(please identify)* _____

☐ Disability/Perceived Disability *(please identify)* _____

☑ Age *(please provide your year of birth only if you asserting a claim for*

*age discrimination)* _____ *1957.* _____

☐ Other *(please identify)* _____

E.  Plaintiff:

☐ Filed charges concerning this discrimination with the Florida

Commission on Human Relations on ; or

☑ Did not file.

F.  If asserting a claim for age discrimination, please indicate the amount of

time that has elapsed since filing your charge of age discrimination with

the Equal Employment Opportunity Commission regarding the

Defendant's alleged discriminatory conduct (*check one*):

☑ 60 days ore more have elapsed.

☐ Less than 60 days have elapsed.

G.  If this is a disability-related claim, did Defendant deny a request for a

reasonable accommodation?  ☐ Yes   ☑ No

Explain: _____

_____

H.  The facts as set forth above in Section III of this complaint:

☐  Are still being committed by Defendant against Plaintiff

☑  Are no longer being committed by Defendant against Plaintiff

I.  Plaintiff:

☐ Still works for Defendant

☑ No longer works for Defendant

☐ Was not hired

## V.  RELIEF

Briefly state what damages you are requesting and include the amounts of any actual damages claimed and the basis for these amounts.  Include any punitive or exemplary damages requested and state the reasons you believe you are entitled to such damages:

As of 9-1-2020 I am still seaking Employment. I have Intenviewed with - B.J.'s Brewhouse, Bahama Breeze, Dave and Busters, Applebees - I feel my inability to get Employment Vinification and my Age (63) are Preventing future Employment. I would Request A Letter of Recommendation be issued By Ruby Tuesday for future Employers coated 9B.

RELIEF
CONT'D

I REQUEST THAT LOST WAGES BE PAID - From TIME OF TERMINATION UNTIL A NEW JOB IS SECURED - DEDUCTING ANY UNEMPLOYMENT PAID BY THIS STATE - $275 PER WEEK. —

I HAD A PLAN TO RETIRE, DEBT FREE, IN SEPT OF '23. MY WIFE AND I WERE ON TRACK FOR THIS TO HAPPEN. - I EXPRESSED THIS GOAL WITH MR. CLAIRE, HR, MORE THAN ONCE —

THIS COMPANY COULD HAVE DEMOTED OR DEVELOPED ME THROUGH DOCUMENTATION OR COUNSELING IF THEY SAW THE NEED. THIS DID NOT HAPPEN —

Plaintiff also requests that the Court grant the following relief to Plaintiff:

☐ Defendant be directed to employ Plaintiff

☑ Defendant be directed to re-employ Plaintiff

☐ Defendant be directed to promote Plaintiff

☐ Defendant be directed to _____

_____

☑ Plaintiff seeks costs and fees involved in litigating this case and such other

relief as may be appropriate, including attorney's fees, if applicable.

## VI. CERTIFICATION

As required by Federal Rule of Civil Procedure 11, I certify by signing below

that to the best of my knowledge, information, and belief, this complaint: (1) is

not being presented for an improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation; (2) is supported

by existing law or by a non-frivolous argument for extending, modifying, or

reversing existing law; (3) the factual contentions have evidentiary support or,

will likely have evidentiary support after a reasonable opportunity for further

investigation or discovery; and (4) the complaint otherwise complies with the

requirements of Rule 11.

I agree to timely notify the Clerk's Office if there is any change to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date: _9-9-2020_ Plaintiff's Signature: _____

Printed Name of Plaintiff: _DAVID T. MILLER_

Address: _308 S.E. HAPPY VALLEY GLEN_

_HIGH SPRINGS FL 32643_

E-Mail Address: _CPTDMILLSL@GMAIL.COM_

Telephone Number: _352-281-2938_.

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **David Miller**
**308 SE Happy Valley Glen**
**High Springs, FL 32643**

From: **Tampa Field Office**
**501 East Polk Street**
**Room 1000**
**Tampa, FL 33602**

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **511-2020-02406** | **Scott M. Kelley,**<br>**Investigator** | **(813) 202-7906** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Evangeline Hawthorne*

June 26, 2020

Enclosures(s)

**Evangeline Hawthorne,**
**Director**

*(Date Mailed)*

cc:    **Leigh C. Tillman**
**VP, Human Resources Ruby Tuesday**
**333 E Broadway Ave.**
**Maryville, TN 37804**

**Zane Herman, Esq.**
**SPIELBERGER LAW GROUP**
**4890 W. Kennedy Blvd., Ste 950**
**Tampa, FL 33609**

EZOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No |
|---|---|
| ☒ FEPA | *Amended* |
| ☒ EEOC | 511-2020-02401c |

**Florida Commission On Human Relations** and E

State or local Agency, if any

| Name (indicate Mr, Ms, Mrs.) | Home Phone (incl Area Code) | Date of Bi |
|---|---|---|
| Mr David Miller | (352) 281-2938 | 03/12/19 |

Street Address                                   City, State and ZIP Code

308 SE Happy Valley Glen, High Springs, FL 32643

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discrimin Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees Members | Phone No. (Include Area Co |
|---|---|---|
| Ruby Tuesday | 15+ | (386) 719-3845 |

Street Address

245 SW Commerce Dr, Lake City, FL 32025

Received

MAR 1 1 2020

Tampa Field Office

| Name | No. Employees Members | Phone No (Include Area Co |
|---|---|---|

Street Address                                   City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 01/1/2018 | 01/24/20 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s))

**This is an amendment to the Charge filed earlier today.**

**Statement of Harm:** Ruby Tuesday, and specifically Ben Renburg (30's, Director of Operations) and Rod Mas (Regional Director), discriminated against me on the basis of my age (62).

In 2018, Ruby Tuesday reorganized its location regions, and the location I managed was assigned to B Renburg's region, the number one operating restaurant in the region( Rack N Stack July 2018). I became t oldest manager in his region. Most of the other managers under Mr. Renburg were much younger. The three mc recently promoted GM's were under 40. I was never asked to tour his area to be introduced to his managers or s the standards he has set for his district, this is customary and was conducted for the manager in Tallahassee wh she came on board a few months after me.

Immediately after I was assigned to his region, Mr. Renburg began undermining my authority in an effort to hara me and subjecting me to disparate treatment as compared to my significantly younger counterparts. For examp Mr. Renburg revoked my authority to provide raises to eligible employees, requiring me to obtain his approval give raises. I was the last in the district to receive the increases for my team after 4 months of requesting. I contrast, Mr. Renburg did not undermine the younger managers of other locations in this manner. I reported M Renburg's discriminatory actions to Mr. Mason, but Mr. Mason did not take any remedial action out discriminatory animus for my age.

**Continued on page 2**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true t best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

3-10-2020    *Paul Miller*

Date        Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To | Agency(ies) Charge No(s) |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA<br>[X] EEOC | |

**Florida Commission On Human Relations**      and EEOC

State or local Agency, if any

THE PARTICULARS ARE (if additional paper is needed, attach extra sheet(s)).

**Continued from page 1**

In response, Mr. Renburg retaliated against me for reporting him by altering my schedule. The other managers and I had collaborated to create a set schedule that ensured consistent and efficient oversight for the restaurant staff. Mr. Renburg forced me to repeatedly redo the schedule before approving it to prevent me from having consistent days off. Mr. Renburg's discriminatory interference with my location's schedule drove one of the other managers to resign, leaving me severely understaffed.

After causing a manager shortage, Mr. Renburg continued to discriminate and retaliate against me by refusing to assist with staffing, and in fact further sabotaging my location. For example, Mr. Renburg decided to terminate my assistant manager to further deplete my staff. Then Mr. Renburg forced me to conduct the termination despite the fact that Mr. Renburg was responsible for conducting terminations of management level employees. Additionally, Mr. Renburg forced one of my employees to transfer to a different location under the pretext that the employee had previously dated one of my other employees nine years ago. Mr. Renburg's purposeful short staffing put increased strain on my staff and myself, decreased staff morale, and caused me to work oppressive hours. It wasn't until the company noticed I had logged 7 consecutive days, 75 hours, that Mr. Renburg sent manager support to my location in December of 2019. Conversely, Mr. Renburg did not subject my significantly younger counterparts to this kind of treatment.

To further discriminate against me, Mr. Renburg conducted a biased review of my location and performance after he depleted my staff, intentionally interviewing only new, discontented employees. At this time he also took the opportunity to award at least three additional increases without my knowledge, one of which was to an employee that had just received a final written notice for attendance 2 weeks prior. I reported the discriminatory review to Mr. Mason.

Instead of taking remedial action, Mr. Mason ratified Mr. Renburg's discriminatory conduct by terminating me under the pretext of "manager conduct policy" with Mr. Renburg. It is apparent that Mr. Mason terminated me due to my age and in retaliation for my protected escalations regarding Mr. Renburg, my substantially younger supervisor.

I had been employed by Ruby Tuesday for over 17 years. I have never been documented for any type of manager misconduct. I feel I epitomize the "Company's Core Values' ' of Attitude, Teamwork, Work Ethics, Integrity, and a Passion for the business. Ben Renburg has a personal issue with my age and experience. He represents the company.

Statement of Discrimination: I believe I have been discriminated against because of my age (62) in violation of the Age Discrimination in Employment Act of 1967 and the Florida Civil Rights Act of 1992.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - When necessary for State and Local Agency Requirements<br><br>**Received** |
|---|---|

MAR 11 2020

Tampa Field Office

I declare under penalty of perjury that the above is true and correct.

3·10·2020  *[signature]*

Date                          Charging Party Signature

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

Received

MAR 11 2020

Tampa Field Office



333 E. BROADWAY AVE.
MARYVILLE, TN 37804
PHONE:  865.379.5700

www.rubytuesday.com

## ALL INFORMATION PROVIDED HEREIN SHALL REMAIN CONFIDENTIAL

March 30, 2020

U.S. Equal Employment Opportunity Commission
Tampa Field Office
501 East Polk St.
Suite 1000
Tampa, FL 33602

### RE:  David Miller, 511-2020-02406

Dear Investigator:

Respondent Ruby Tuesday ("Ruby Tuesday" or the "Company") respectfully submits this Position Statement in response to the above-referenced Charge of Discrimination ("Charge") filed by David Miller ("Miller" or "Charging Party").[1]Miller charges that he was discriminated against and discharged on the basis of his race, national origin, and age in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), as well as the Age Discrimination in Employment Act ("ADEA"). Ruby Tuesday denies that Miller was discriminated against on any basis, and in support thereof, it shows the following:

### A. Ruby Tuesday Background

Ruby Tuesday owns and operates Ruby Tuesday casual dining restaurants. Ruby Tuesday owns or operates over 350 Ruby Tuesday restaurants in 38 states and 11 countries. To offer the very best customer service and workplace for its employees, Ruby Tuesday is committed to an environment of non-discrimination and non-harassment. Specifically, Ruby Tuesday maintains

---

[1] This position statement is based on the facts as presently known to Ruby Tuesday. The contents of the position statement are not intended to constitute admission and are subject to change based on the discovery of additional facts. Ruby Tuesday reserves the right to add to and/or modify its position statement.  The position statement is solely for the use of the Equal Employment Opportunity Commission ("EEOC") in connection with the EEOC's investigation of the Charge.  This disclosure of information to the EEOC is for purposes of its investigatory proceedings and is not and should not be considered a waiver of the attorney-client or attorney work product privileges, which Ruby Tuesday maintains herein.



333 E. BROADWAY AVE.
MARYVILLE, TN 37804
PHONE: 865.379.5700

www.rubytuesday.com

an employee Code of Conduct expecting its employees to uphold the highest standards of uncompromising ethics, including refraining from discrimination and harassment and reporting same if witnessed or experienced in any respect. Further, Ruby Tuesday maintains and trains its employees on its Equal Employment Opportunity Policy as well as Non-Discrimination and Anti-Harassment Policy which prohibit harassment and discrimination on any protected basis, including, but not limited to, sex discrimination in all aspects of its business and operations. Likewise, Ruby Tuesday maintains an Open Door and Non-Retaliation Policy encouraging employees to bring their concerns to the attention of management and/or through an employee hotline known as the Team Member Connect Line.[2]

To ensure that each employee, understands Ruby Tuesday's commitment to anti-harassment and anti-discrimination in its operations – whether it be related to employees or customers – Ruby Tuesday educates its Team Members and Managers on its many anti-discrimination and anti-harassment policies. With respect to Managers specifically, Ruby Tuesday demonstrates its commitment to anti-discriminatory practices within its Business Conduct and Ethics.[3]The Policy states, in part, that in accordance with all applicable federal, state and local laws, "[h]arassment or discrimination of any type or any nature, whether based on race, gender, sex, sexual orientation, age, religious affiliation, disability, pregnancy, national origin, genetic information, or any other protected category, is wrong, unfair, and will not be tolerated," and that "[a]nyone who engages in harassing or discriminating conduct will be subject to discipline, up to and including termination." Miller, like all other Team Members, received a copy of the Policy. Accordingly, Miller was expected to know and understand the Ruby Tuesday policies and any methods to report violations of those policies.

### B. Miller's Background

Miller (63 yo, W, M) worked for Ruby Tuesday as a General Manager with a hire date of June 17, 2002. He was terminated from his position on January 24, 2020 by Regional Coach, Rod Mason (59 yo W, M) following several months of inappropriate comments and outbursts towards his manager, Area Coach Ben Renberg (43 yo, W,M). Mr. Miller was replaced by an Assistant General Manager from this location, Jeanette Young (39 yo,W, F). At the time of Miller's separation, Mr. Renberg had 12 General Managers reporting to him, of which 75% were above the age of 40. *See Exhibit E, Ages of GMs.*

---

[2] See Exhibit A, Code of Business Conduct and Ethics., Exhibit B, Equal Employment Opportunity Policy, Exhibit C, Non-Discrimination and Anti-Harassment Policy, and Exhibit D, Open Door Policy
[3] See Exhibit B, page 6



333 E. BROADWAY AVE.
MARYVILLE, TN 37804
PHONE: 865.379.5700

www.rubytuesday.com

Miller's employment with Ruby Tuesday was not without incident. On or around March 2019, Miller's Manager, Ben Renberg began hearing complaints from team members about Mr. Miller, namely he was not pulling his weight, he was unapproachable, he had favorites, and he was not in the building when he was supposed to be. For this reason, Mr. Renberg and his manager, Rod Mason, pulled together a cross section of team members and held a Quality Circle to hear their concerns. It was during this Quality Circle that many of the aforementioned concerns were confirmed. Following the Quality Circle, a one on one was held with Miller to provide him with this feedback and suggestions on how he could improve his performance.

It was during this feedback that Miller first became confrontational and grossly insubordinate blaming Mr. Renberg for the situation and failing to take ownership or listen to the feedback. Miller had to be interrupted during his unproductive outburst and a later discussion scheduled which included Mr. Mason. A day or two later, a meeting was held with Miller, Mr. Renberg, and Mr. Mason at the local Holiday Inn. Miller appeared to receive the feedback in a constructive and well accepted manner.

Renberg believes Miller improved his performance and conduct. However, in December 2020, the new Assistant General Manager, Jeanette Young, approached Renberg with statements she had been hearing. She shared with Renberg that Miller was not very detailed with the team, doesn't hold team members accountable and was saying negative things about Renberg such as, "he got his position out of luck," "he was promoted too early," and, "he was Rod's boy."

On or around January 15, 2020, Renberg sat down to conduct a verbal warning with Miller reviewing P&L (profit and loss statements), his unusually high turnover, and his behavior. It was during this meeting; Miller began to yell and shout profanity at Mr. Renberg forcing him to halt the discussion. Mr. Renberg contacted Mr. Mason about the situation and after consulting with Human Resources, made the decision that termination would be the outcome.

Mason and Michael Clair (Human Resources Business Partner) met with at the Holiday Inn with Miller on or about January 20, 2020. It was during this meeting Miller was told he was terminated for violation of Management Code of Conduct, See Exhibit F, Manager Code of Conduct Policy.

### C. Response to Miller's Claims of Discrimination

Miller alleges that he was discriminated against on the basis of age (63). Ruby Tuesday denies that Miller was discriminated against on any basis. Rather, as set forth herein, Ruby Tuesday terminated Miller based upon legitimate, non-discriminatory reasons.



333 E. BROADWAY AVE.
MARYVILLE, TN 37804
PHONE:  865.379.5700

www.rubytuesday.com

*1. Miller was not discriminated against on the basis of his age.*

Miller claims he was discriminated against on the basis of his age (61) as it relates to team member raises. However, this claim is meritless, as the protocol for raises is for the Regional Coach, in this case, Mason, to approve all raises. This was a procedure throughout the organization and Mr. Mason required Mr. Renberg and all Area Coaches to first review raises before presenting them to Mr. Mason. See Exhibit G, Interview Notes_Rod Mason.

Miller also alleges his schedule was changed because of his age. There are guidelines for all managers to follow as to the number of days worked per week, the specific days worked, and the shifts worked. All managers were required to submit their schedule for approval and alterations may be made accordingly.

To establish a claim of age discrimination, Miller must prove that age was the "but-for" cause of Ruby Tuesday's decision to terminate his employment. *Gross v. FBL Fin. Servs., Inc.,* 129 S. Ct. 2343, 2350 (2009). This means that the adverse employment action would not have occurred without the consideration of her age; stated differently, consideration of her age cannot be not regarded as a cause of his termination if her termination would still have occurred without it.

This region employed a majority of managers over the age of 40 (75% over the age of 40, with two being over 60). There were three under the age of 40 (25%). It follows that as similarly situated employees *outside* of Miller's protected class, these three were not treated differently or more favorably than Miller. Ruby Tuesday did not consider Miller's, nor anyone else's, age in arriving at its adverse employment decisions against them. *Even if* Miller were able to produce some evidence to show that age was at least one motivating factor in his termination, it is clear from Ruby Tuesday's records that he still would have been terminated as a result of his outburst and insubordinate behavior towards his manager.

**D. Conclusion**

Miller's allegations of discrimination and retaliation on the basis of age are clearly without merit. As the facts and evidence demonstrate, there is nothing to substantiate Miller's allegations in any way that he was discriminated against, nor is there any indication that his termination was in any way related to or associated with his age. Considering in isolation the sole factor of his



333 E. BROADWAY AVE.
MARYVILLE, TN 37804
PHONE:   865.379.5700

www.rubytuesday.com

multiple and repeated Policy violations, it is indisputable that Ruby Tuesday had legitimate, non-discriminatory reasons to terminate Miller's employment.

Because Miller is unable to support his allegations, this Charge of Discrimination should be dismissed. Should you have any questions or need further information, please do not hesitate to contact me.

Respectfully,

*/s/ Leigh Tillman*
Leigh Tillman
Vice President, Human Resources

Enclosures

EXHIBIT D



Open Door & Non-Retaliation Policy

We want to hear from you! If you have concerns about your work, work environment, Team, Team Leadership, policies or any other work-related issue, please feel free to discuss them with your Manager. If you are not satisfied with your Manager's response or feel you are unable to discuss the matter with your Manager, you may choose to discuss the issue with your DO, VPO, SVP, Human Resources or through the Open-Door Line at 1-800-633-8483.

At Ruby Tuesday, Inc. Team Members are free to raise concerns at any level without fear of retaliation. Supervisors may not retaliate against any Team Member for making a complaint, Retaliation will result in termination. The Company simply does not tolerate retaliatory behavior from its Team Members, especially those employed in a supervisory capacity.

Open Door Line at 1-800-633-8483

©8/9/2019

EXHIBIT E

Ages of GMs

| GM | Age |
|----|-----|
|  | 32 |
|  | 34 |
|  | 39 |
|  | 41 |
|  | 44 |
|  | 44 |
|  | 44 |
|  | 48 |
|  | 49 |
|  | 57 |
|  | 61 |
| David Miller | 63 |

YEAN MITSA — CHUCK ESKANHOT

Over 40          75%

EXHIBIT F

# **Ruby Tuesday**

**Investigation
Interview Notes**

| | | |
|---|---|---|
| **Investigator Name** | Leigh Tillman | **Interviewee Name** Rod Mason |
| **Investigator Title** | VP, Field Human Resources | **Interviewee Title** Regional Coach |
| **Method** | X By Phone ☐ In Person | **Interview Date** 3/23/2020 |

## Questions to Consider:

☐  What happened?

☐  Who was involved?

☐  Who initiated it?

☐  When did it happen?

☐  Who else was there? Witnesses?

☐  Where did it happen?

☐  Tell me more about that.

☐  Is there anyone else I should talk to?

☐  Is there anything else I should know?

## Notes:

**What happened with raises? Did you require all managers to get approval before processing a raise? Why or why not?**

Started under Marty Ritson and continues-raises were discouraged because wage rates were climbing. Policy was no wage increase unless they went through the Regional Coach and the RC had the final say. Ben was not allowed to give raises without Rod's approval. This was the case for the enterprise.

**Did David ever complain to you that he was being treated differently by Ben?**

He did. I recall after a Quality Circle meeting and we were having a visit. He felt like Renberg was micromanaging him. I told him Renberg practices exception management. If you are having an issue, he's going to stay on you until you get it done. I always listened to him but when Dave brought an issue to me about Ben, I'd bring it to Ben to discuss the friction. Before Dave ever came to me, we were having issues with Dave. He was a little bit of a loose cannon. We did a quality circle which was a fair representation of staff by position and tenure. All the feedback was consistent with Dave practicing a do as I say not as I do philosophy. Complaints that he was lazy, not available when needed, selfish with his schedule, plays favorites. After that feedback, Ben worked with Dave to seek common ground which could possibly make him feel he was micromanaged.

Why did you have the quality circle in first place?

Morale not good; team members complaining; had lost some good people. Had an Assistant Manager, Angie, that I was really fond of. She was very smart, good operator, good with people. Thought she could be a really good GM. She started to hint that she wasn't happy-carrying Dave's workload, working around the clock. The big blocks were I liked her and she raised the flag that she was having difficulty. Asked a few questions and discovered the morale was bad. The schedule was an issue at one point-I feel like we tried to respond in an urgent manner, but we were down a manager. We overworked her and Chili's offered her a good job with a significantly higher salary. She was very polite and professional. She would have come back if Dave wasn't there. She reached out to me on Linked In. I had Ben reach out to her.

Robert May-we dismissed; I'd have to check my notes. I do remember performance, timeliness, tardiness, some policy violations. I think his last few days he came in under the influence. A series of poor judgement, poor performance issues. And I believe there was friction between Ben and Miller on this. Just can't remember.

Why was Dave terminated?

Guessing it's been two and a half months. For Ben's sake, I'd ask Clair (HR) if Ben had what he needed to discuss Dave-some of Dave's conduct was insubordinate and vulgar; the way Dave spoke to Ben was inappropriate. I had seen similar behavior when he worked for Rich Rylke. The final straw was that we were putting in new management in the restaurant. The Shift Leader we were trying to promote had sexual relationships with the team. Dave was talking poorly about leadership-Ben, me, the company-he was creating dissension. It was either Kat or Jeanette, or both, the new manager Jeanette called and said this is really weird. This is how Dave is talking about you and your leadership. That created more dissension with management. That's when HR finally said, yes, this is enough.

I met Clair and Dave at the Holiday Inn for the separation conversation. I told him something like Dave we're letting you go because of management conduct. I walked him through a brief history of all the notice and opportunity we'd provided and most recently his blow ups with Renberg and finally, the dissension and comments to Jeanette and Kat. He asked for specifics and Rod had already pointed him to three episodes he was directly involved in. Told Dave, he couldn't get more specific than that.

The only other thing, Dave has had a history when he had fraternizations issues-meet the team at the Jacksonville Landing for events. While I can't remember specifics, he was demoted and put in Lake City from Gainesville. He behaved himself and got re-promoted. Under Rich Rylke, he was looking at termination for similar reasons, wouldn't work nights or weekends. I never had anything concrete.

Angie is not a team member any longer, but she was employed through the entire episode. She may be good to speak to. She was along with it all. She's the voice of reason. She'd be pretty objective. Jeanette would be pretty objective. She had no idea of the history or the friction between her and Renberg. Abe knew; I approached him at the time and said I can't get into details and counting on you to help with transition. First response was look; I like the guy, but I totally get it. I was expecting push back and his response was "I totally get it."

Re: Quality Circle Meeting 3/4/2019                                    Page 1 of 2

# **Re: Quality Circle Meeting 3/4/2019**

Ben Renberg
**Sent:** Friday, March 08, 2019 10:56 PM
**To:**    4680 - Lake City FL

Sorry. Just saw this. I'll review with you on Tuesday

Thank you.
Ben Renberg
Director of Operations Ruby Tuesday
904-588-6086
brenberg@rubytuesday.com

Sent from my iPhone

On Feb 24, 2019, at 5:00 PM, 4680 - Lake City FL <RT4680@rubytuesday.com> wrote:

> Ben,
> I have a couple questions if you don't mind.
> 1. What prompted the meeting?, 2. When was the last time you conducted one. 3. Are you
> conducting this yourself?
>
> Just curious, never thought to ask. Trust me I love the concept, just not sure of the motive.
>
> Thanks
>
> David
>
> ---
>
> **From:** Ben Renberg
> **Sent:** Sunday, February 24, 2019 3:02 PM
> **To:** 4680 - Lake City FL
> **Subject:** Quality Circle Meeting 3/4/2019
>
> Please join me for a Quality Circle meeting from 3 to 5pm on Monday March 4th. Meeting
> will be held at the Holiday Inn located next to the restaurant.
>
> This meeting is designed for you to provide insight to any concerns you may have within
> the restaurant. It will be you opportunity to speak to those concerns and offer your thoughts
> on what solutions may help improve your ability to deliver great Food & Service in a clean
> restaurant.
>
> If you are interested in attending please speak with Dave or Angie and they will put you on
> the list. As always you may contact me as well. You will be paid for the time at the
> meeting.

 Gmail

David Miller <cptdmiller@gmail.com>

## Quality Circle Notes
1 message

Ben Renberg <BRenberg@rubytuesday.com>                      Sat, Mar 16, 2019 at 9:07 AM
To: David Miller <cptdmiller@gmail.com>
Cc: Rod Mason <rmason@rubytuesday.com>

Dave, thanks again for the time yesterday.

Below are the bullet points from the QC meeting. I look forward to catching up with you when I return from vacation.

I will make sure I include you on any communication I have with any of your teams or mgrs. and work through you in most cases.

- Communication needs to improve
  - Teams feel uninformed when it comes to Promotions, Menus Roll outs, Schedule Changes, Staffing needs, ect
  - Veteran teams feel New Teams are unclear on job responsibilities. (AM utility is an example, Team work in the HOH with Dish Pit is another example)
  - Praise and Accountability needs improvement
    - Teams don't feel apricated or thanked for actions. (Thank you will go a long way)
    - Accountability (Teams unclear as to why some top performers are held more accountable than others) People show up late or miss shifts with no accountability in their eyes. (May need to give them some insight not a lot of details, but enough so they feel mgrs. are aware and holding the line.) Worst is when teams do acts that most would be termination worthy (Example Steve and John...Both have been counseled)
- Schedules
  - Teams feel over worked and don't see balance in the schedule day to day, night to night. Would follow S4S labor card from HS to make sure Schedules are built effectively.
  - Comments were made that Dave's shifts are stacked with talent, but when he leaves we have weaker teams. (Would suggest better balance in Mgr Scheduling and better placement of teams with strengths.
- Support
  - Need you to be more approachable, and Genuine with you actions towards teams. They need what they need, they need to feel that their needs are important. They feel that you give the impression/actions that your needs are more important than theirs or the whole team's needs.
    - Some teams felt bullied or that your unapproachable because your in one of those moods.
  - Need you to have a more impactful presents while in the Restaurant. Teams under the impression your more concerned about your personal time than making improvements to the work environment
  - Teams are looking for you to feel their concerns (Whether ideas of the restaurant, or concerns with other teams/work environment) are important and handled with a sense of urgency, along with follow up to validate concerns have improved.
  - HOH felt your HOH skill set is weak (Not concerned about your ability to work a position, but your ability to help them be set up for shifts, direction and support to be shift ready.)
  - Develop a catering delivery team. (Bartenders taking orders and not being back until mid or post lunch rush is not an option.)

I am not looking for everything to be perfect, but I am looking for teams to say things have changed, actions are improving, and they feel better about the leadership you're providing them.

 **Gmail**

David Miller <cptdmiller@gmail.com>

## Frustrated
2 messages

**David Miller** <cptdmiller@gmail.com>                         Fri, Nov 2, 2018 at 7:34 AM
To: Ben Renberg <BRenberg@rubytuesday.com>
Bcc: Lisa Miller <burmisa@gmail.com>

Ben first I want to apologize if I was insubordinate with you in any way. That is not my intent.
I am very frustrated with some of the things that are happening right now.
I feel that Robert May should have been placed on a development plan by you on the 31st of July when I documented
him and we sat down and discuss his progress or lack there of. I feel like you micro manage some things, ie; guest
complaints , manager schedules. When I think management development development should be in your realm of
responsibility.
When I sent you the email from my plumber about the new payment policy, I was asking for an exception, on this job , for
this vendor. The policy is clear, didn't need it explained.
When I take money out of my pocket to buy cucumbers or coffee because I don't want to hear you tell me to drive a
hundred miles to get them, I see that as a problem.
And lastly but most important. My team. I think I have made multiple requests and received little movement. Actually
none. Very frustrating.
Vendor can't adapt, get a new one. Teams don't agree with the new way we do things, get new ones. Manager doesn't
have the aptitude for certain tasks , fire him and try to get another one.
I would hope that we could sit down soon and discuss some of my frustrations. You were DO of the year. I am a GM that
has been in the top 10% performing restaurant for years. I think working together we could accomplish great things for our
company, ourselves and our community.

David

---

**Ben Renberg** <BRenberg@rubytuesday.com>                      Fri, Nov 2, 2018 at 8:05 AM
To: David Miller <cptdmiller@gmail.com>

We'll talk.

Not going to do this over email.

Thank you for the communication and apology.

Stop taking money out of your pocket to buy items. I never asked or expect anyone to do that. Put the receipts in today
as paid outs and get your money back please.

[Quoted text hidden]



March 5, 2020

**ATTORNEYS AT LAW**

James Spielberger ‡†
Gabrielle Klepper *† ⌀ ★ ◊‡
Lisa Scheibly ✱
Zane Herman ✱
Jeffrey Del Rio ✱◊‡
Christopher A. Fennell ✱
Abby Salzer ✱ ▲
Gary Maroccio ✱✱★ ⌀ +
Joshua Robert Rich ✱∇
Eric D. Rogers ✱ ⌀
Eric Bossardt ✱
Samuel Doxsee ✱

**VIA FAX: 1 (813) 228-2841**
Equal Employment Opportunity Commission
Tampa Field Office
501 E. Polk St., Ste. 1000
Tampa, FL 33602

**Received**

**MAR 0 5 2020**

**Tampa Field Office**

**OFFICES**

Charleston
Tampa
Chicago *
Atlanta *
Charlotte *
Raleigh *
Orlando *
Jacksonville*
Ft. Lauderdale*
Austin*
Houston *
Dallas *
Philadelphia*
Pittsburgh *
Arlington *
* by apt. only

> *RE:*  *Employee:*  *David Miller*
> *Employer:*  *Ruby Tuesday*

Dear Sir or Madam:

David Miller has retained this law firm to represent her in connection with her employment claims against Ruby Tuesday. Please direct all future correspondence, communications, and documents regarding this matter to our firm. Please note that Mr. Miller is agreeable to mediation.

Mr. Miller's personal contact information is: cptdmiller@gmail.com, (352) 281-2938. Opposing counsel's contact information is: Leigh Tillman, ltillman@rubytuesday.com, (865) 379-5696.

Our firm can be contacted at (800) 965-1570 ext. 105. Thank you in advance for your prompt attention to this matter.

**OF COUNSEL:**
◆

**ONLY LICENSED IN:**
† SC
‡ GA
▪ VA
+ NC
✱ IL
⌀ TX
✱ FL
★ AZ
◆ PA
◆ CO
▲ OH
∇ TN

Best regards,

Zane Herman

cc: David Miller

Administrative Office: 4890 W. Kennedy Blvd. Suite 950, Tampa, Florida 33609

Phone: (800) 965.1570  Fax: (866) 580.7499